JUDGE PAULEY

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
Yu Shi, Esq. (YS 2182)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: yshi@rosenlegal.com

Counsel for Plaintiff



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHUONG HO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>                  Plaintiff,<br><br>        vs.<br><br>NQ MOBILE, INC., YU "HENRY" LIN, OMAR KHAN, WENGYONG "VINCENT" SHI, XU ZHOU, KB TEO, SUHAI JI, JAMES DING, JUN ZHANG, YIN HAN, WILLIAM LI, XIUMING TAO, WEIGUO ZHAO, PIPER JEFFRAY & CO., OPPENHEIMER & CO., INC., and CANACCORD GENUITY INC.,<br><br>                  Defendants. | **CASE No.:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

1

Plaintiff Phuong Ho, individually and on behalf of all other persons similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by NQ Mobile, Inc. ("NQ Mobile" or the "Company"), and analyst and other media reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all purchasers of the common stock and call options and sellers of put options of NQ Mobile between May 5, 2011 and October 24, 2013, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against NQ Mobile, certain of its senior executives, and underwrites for violations of the federal securities laws under the Securities Act of 1933 (the "Securities Act") the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Defendant NQ Mobile is a company incorporated in the Cayman Islands, with headquarters in Beijing, China. The Company was founded in 2005, and purports to provide mobile internet services in the areas of privacy, mobile security, personalized cloud, productivity, and family protection.  The Company offers a variety of products such as NQ Mobile Vault, NQ Mobile Call Blocker, and NQ Space.

3.      The Company was originally named NetQin Mobile Inc. The Company changed its name to NQ Mobile in April of 2012.

4.      On May 5, 2011, the Company conducted an Initial Public Offering ("IPO"); proceeds from the IPO totaled $82.9 million.

5.      On October 24, 2013, Muddy Waters Research issued a report (the "Report") that asserted that NQ Mobile has greatly over stated and exaggerated its true financial performance. The report alleges, among other frauds, that at least 72% of NQ Mobile's purported China security revenue is fictitious.

6.      The Report continues to allege that NQ Mobile is its own largest customer and its actual market share in China is approximately 1.5%, rather than the 55% that the Company claims.

7.      Furthermore, the Report questions the accuracy and veracity of NQ Mobile's cash balances, its reported international revenue and its financial statements filed with the State Administration for Industry & Commerce of the People's Republic of China and the U.S. Securities and Exchange Commission (the "SEC").

8.      The same day that this report was issued, NQ Mobile's stock which trades on the NYSE under the ticker symbol NQ fell a shattering 47% to close at $12.09 from an opening price of $23 a share. That same day, trading was halted on NQ stock.

9.      The Class Period starts on May 5, 2011, when NQ Mobile conducted its IPO, and ends October 24, 2013 when the Muddy Waters Report was issued.

## JURISDICTION AND VENUE

10.      Jurisdiction is conferred by §27 of the Exchange Act. The claims asserted herein

arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

11.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as the Company conducts business in this district.

12.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

13.     Plaintiff Phuong Ho, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the common stock of NQ Mobile during the Class Period and has been damaged thereby.

14.     Defendant NQ Mobile is a Cayman Island company with headquarters in Beijing, China. The company is primarily engaged in the business of mobile security, privacy, and productivity. The Company's common stock is listed on the NYSE, an efficient market, under the ticker symbol "NQ" and, as of October 24, 2013, the Company had more than 51.48 million shares of its common stock outstanding.

15.     Defendant Yu "Henry" Lin ("Lin") is a co-founder of the Company and the Company's Chairman, co-CEO and chief architect.

16.     Defendant Omar Khan ("Khan") has been the Company's co-CEO since January 2012. He is also a Director of the Company.

4

17.     Defendant Wenyong "Vincent" Shi ("Shi") is a co-founder of the Company and has served as the COO since 2005.  He is also a Director of the Company.

18.     Defendant Xu Zhuo ("Zhuo") is the Company's co-founder and a Director of the Company.

19.     Defendant KB Teo ("Teo") has been CFO of the Company since September 2013.

20.     Defendant Suhai Ji ("Ji") served as CFO of the Company from November 2010 to September 2013.

21.     Defendant James Ding ("Ding") is a Director of the Company and serves as chair of the Company's Corporate Governance and Nominating Committee.

22.     Defendant Jun Zhang ("Zhang") is Director of the Company.  Zhang is chair of the Company's Compensation Committee.  Zhang also sits on the Company's Audit Committee and Corporate Governance and Nominating Committee.

23.     Defendant Yin Han ("Han") is a Director of the Company.  Han serves as chair of the Company's Audit Committee.  Zhang also sit on the Company's Compensation Committee and Corporate Governance and Nominating Committee.

24.     Defendant William Li ("Li") is a Director of the Company and a member of the Company's Audit Committee.

25.     Defendant Xiuming Tao ("Tao") is a Director of the Company and a member of the Company's Compensation Committee.

26.     Defendant Weiguo Zhao ("Zhao") was a Director of the Company.

27.     Defendant Piper Jaffray & Co. ("Piper") is an investment banking and asset management firm headquartered in Minnesota.  Piper served as an underwriter for NQ Mobile's IPO.  Piper was the sole bookrunner for the IPO and the representative of the underwriters.

28.     Defendant Oppenheimer & Co., Inc. ("Oppenheimer") is an investment banking firm headquartered in New York.  Oppenheimer was an underwriter for NQ Mobile's IPO.

29.     Defendant Canaccord Genuity Inc. ("Canaccord") is an investment banking firm headquartered in New York.  Oppenheimer was an underwriter for NQ Mobile's IPO.

30.     The defendants referenced above in ¶¶17-28 are referred to herein as the "Individual Defendants."

31.     Piper, Oppenheimer, and Canaccord are referred to herein, collectively, as the "Underwriter Defendants."

32.     NQ Mobile, the Individual Defendants, Piper, Oppenheimer, and Canaccord are referred to herein, collectively, as "defendants."

## BACKGROUND

33.     On March 15, 2011, NQ Mobile filed a Registration Statement on Form F-1 with the SEC, with the aim of conducting an initial public offering on the NYSE to raise capital from the U.S. capital markets.

34.     After a series of amendments, the Registration Statement was declared effective by the SEC on May 4, 2011.

35.     The Registration Statement was signed by Defendants Lin, Ji, Ding, Zhang, Zhao, Zhou, Shi, and Han.

36.     The final Prospectus was filed with the SEC on May 6, 2011.

6

37.     The IPO was underwritten by a team of underwriters comprised of Piper, Oppenheimer, and Canaccord.

38.     On April 13, 2013, NQ Mobile filed its annual report with the SEC on Form 20-F.

39.     The accompanying Sarbanes-Oxley certifications for the 20-F were signed by Defendants Lin, Khan, and Ji.

40.     In a March 2013 presentation to investors, NQ Mobile reported $32.2 million in security software revenue in 2012 from sales in China.

41.     According to NQ Mobile's Registration Statement and 20-Fs, its largest customer is an independent company called Tianjin Yidatong Technology Development Co., Ltd ("Yidatong"). Yidatong accounts for the vast majority of NQ Mobile's purported revenue in China. For example, NQ Mobile reports that in 2012, Yidatong accounted for $20.2 million of the Company's total revenue, or nearly two-third of NQ Mobile's revenue from security software sales in China.

42.     NQ Mobile's Registration Statement states: "Net revenues generated through our top mobile payment service provider, Tianjin Yidatong Technology Development Co., Ltd., or Yidatong, as a percentage of our total net revenues, were 52.7%, 20.0% and 21.4% in 2008, 2009 and 2010, respectively."

43.     On its 20-F for the year 2012, NQ Mobile states: "...net revenues generated through our top mobile payment service provider, Tianjin Yidatong Technology Development Co., Ltd., or Yidatong, as a percentage of our total net revenues, were 21.4%, 25.8% and 22.1% in 2010, 2011 and 2012, respectively."

44.     NQ Mobile also claims substantial revenue from overseas. On its 20-F for 2012,

7

the Company claimed that: "Net revenues from its overseas customers were US [$6.2 million], US [$17.6 million] and US [$36.5] million for the years ended December 31, 2010, 2011 and 2012, respectively."

## THE TRUTH EMERGES

45.     On October 24, 2013, Muddy Waters Research released an 81-page report, calling NQ Mobile a "massive fraud."

46.     The Report revealed that at least 72% of NQ's reported $32.2 million in 2012 security software revenue from China is fraudulent.

47.     Muddy Waters discovered that Yidatong, the purported largest customer of NQ Mobile, is actually a shell company controlled by NQ Mobile.

48.     According to Muddy Waters: "After conducting extensive due diligence on [Yidatong], we conclude that [Yidatong] is an empty shell with no discernible operation whatsoever.  Further, [Yidatong] is really NQ.  Our due diligence process included visiting 10 sites purported occupied by [Yidatong], all of which were empty or did not exist; studying [Yidatong]'s SAIC files and financial statements; searching for current and former employees; and reviewing various other records."

49.     After eliminating NQ Mobile's fraudulent sales to Yidatong, NQ Mobile's real security revenue from China was between $2.5 million to $7.7 million, a mere 7.8% to 23.9% of what was reported by NQ Mobile.

50.     Muddy Waters' research also concluded that NQ Mobile's real market share in China is only about 1.5%, compared to the approximately 55% it reports.

51.     Muddy Waters further concluded that the vast majority of NQ Mobile's reported

8

international revenue is also false.  The Report states that "NQ claims to generate international revenue in obscure markets, and through mysterious counterparties that seem to seldom pay."

52.     Although NQ Mobile claims that its international revenue in 2012 was $36.5 million, Distimo – a web analytic company – estimates NQ Mobile's year-to-day worldwide revenue at less than $800,000.

53.     As a result of the revelations in the Muddy Waters Report, NQ Mobile stock fell by 47% to close at $12.09 from an opening price of $23 a share. That same day, trading was halted on NQ stock.  Approximately $500 million in market capitalization was lost.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of the common stock and call options and sellers of put options of NQ Mobile during the Class Period (the "Class"). Excluded from the Class are defendants and their  families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

55.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, NQ Mobile ADS and other publicly traded securities were actively traded on the NYSE. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by NQ

Mobile or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

56.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

57.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

58.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the Securities Act and/or the Exchange Act was violated by defendants as alleged herein;

(b)    whether statements made by defendants misrepresented material facts about the business, operations and management of NQ Mobile; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

59.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

10

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

60.     The market for NQ Mobile common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, NQ Mobile securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired NQ Mobile securities relying upon the integrity of the market price of NQ Mobile securities and market information relating to NQ Mobile, and have been damaged thereby.

61.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of NQ Mobile securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

62.     At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about NQ Mobile's business, prospects, and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of NQ Mobile and its business, prospects, and operations, thus causing the Company's  securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in

11

plaintiff and other members of the Class purchasing NQ Mobile securities at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of NQ Mobile common stock was removed and the price of NQ Mobile common stock declined dramatically, causing losses to plaintiff and the other members of the Class.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**
***AFFILIATED UTE***

63.     Neither Plaintiff nor the Class need prove reliance -- either individually or as a class because under the circumstances of this case, which involves a failure to disclose the material related party transactions described herein above, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).    All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

**ADDITIONAL SCIENTER ALLEGATIONS**

64.     As alleged herein, NQ Mobile and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding NQ Mobile, their control over, and/or receipt and/or modification of the Company's allegedly

12

materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning NQ Mobile, participated in the fraudulent scheme alleged herein.

## NO SAFE HARBOR

65.     NQ Mobile's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, including those filed with the SEC on Form 6-K, they are excluded from the protection of the statutory Safe Harbor. *See* 15 U.S.C. §78u- 5(b)(2)(A).

## APPLICATION OF PRESUMPTION OF RELIANCE:<br>LOSS CAUSATION/ECONOMIC LOSS

66.     During the Class Period, as detailed herein, defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of NQ Mobile securities and operated as a fraud or deceit on Class Period purchasers of NQ Mobile securities by misrepresenting the value of the Company's business and prospects by overstating its earnings and concealing the significant defects in its internal controls. As defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of NQ Mobile common stock fell precipitously, as the prior artificial inflation came out of the price. As a result of their purchases of NQ Mobile securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.,* damages, under the federal securities laws.

## COUNT I

### For Violations of §10(b) of the Exchange Act and Rule 10b-5
### Against NQ Mobile and the Individual Defendants

67.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  This claim is asserted against NQ Mobile and the Individual Defendants ("First Claim Defendants").

68.     During the Class Period, the First Claim Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the NQ Mobile's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

69.     The First Claim Defendants (a) employed devices, schemes, and artifices to defraud;  (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for NQ Mobile's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

70.     The First Claim Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and

participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of NQ Mobile as specified herein.

71.     The First Claim Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of NQ Mobile's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about NQ Mobile and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of NQ Mobile's securities during the Class Period.

72.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company=s financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware

15

of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

73.     The First Claim Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing NQ Mobile's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by these Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

74.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of NQ Mobile securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of NQ Mobile's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by the First Claim Defendants but not disclosed in public statements by the First Claim Defendants during the Class Period, Plaintiff and the other

16

members of the Class acquired NQ Mobile securities during the Class Period at artificially high prices and were or will be damaged thereby.

75.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding NQ Mobile's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their NQ Mobile securities, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

76.     By virtue of the foregoing, the First Claim Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

77.     As a direct and proximate result of the First Claim Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's Securities during the Class Period.

78.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

### For Violations of §11 of the Securities Act
### Against All Defendants Except Khan and Teo

79.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  This claim is asserted against all defendants except Khan and Teo ("Second Claim Defendants").

80.     This claim is brought by Plaintiff on her own behalf and on behalf of other members of the Class who acquired NQ Mobile securities pursuant to or traceable to the Company's IPO. Each Class Member acquired his, her, or its shares pursuant to and/or traceable to, and in reliance on, the Registration Statement and Prospectus. NQ Mobile is the issuer of the securities through the Registration Statement and Prospectus. The Individual Defendants are signatories of the Registration Statement and Prospectus.

81.     Underwriter Defendants owed to the holders of the securities obtained through the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading. Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement as set forth herein. As such, defendants are liable to the Class

82.     All Second Claim Defendants owed to the purchasers of the stock obtained through the Registration Statement and Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement and Prospectus at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.

83.     None of the Second Claim Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration

18

Statement and Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

84.     The Second Claim Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public that were contained in the Registration Statement and Prospectus, which misrepresented or failed to disclose, among other things, the facts set forth above.  By reason of the conduct alleged herein, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

85.     NQ Mobile is the issuer of the stock sold via the Registration Statement and Prospectus.  As issuer of stock, the Company is strictly liable to Plaintiff and the Class for the material misstatements and omissions therein.

86.     At the times they obtained their shares of NQ Mobile, Plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements and omissions alleged herein.

87.     This action is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statement and Prospectus that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement and Prospectus.

88.     By virtue of the foregoing, plaintiff and the other members of the class are entitled to damages under Section 11 as measured by the provisions of the Section 11(e), from the defendants and each of them, jointly and severally.

**COUNT III**

19

**For Violations of §12(a)(2) of the Securities Act**
**Against NQ Mobile and the Underwriter Defendants**

89.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  This claim is asserted against NQ Mobile and the Underwriter Defendants ("Third Claim Defendants").

90.     The Third Claim Defendants were sellers, offerors and/or solicitors of sales of the shares offered pursuant to the Registration Statement.  The Registration Statement contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts, as set forth above.

91.     Plaintiff and the other Class members who purchased or otherwise acquired shares pursuant or traceable to the materially untrue and misleading Registration Statement did not know or, in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Registration Statement.

92.     The Third Claim Defendants owed to Plaintiffs and the other Class members who purchased or otherwise acquired shares pursuant or traceable to the materially false and misleading Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement, to ensure such statements were true and that there was no omission of material fact necessary to prevent the statements contained therein from being misleading. The Third Claim Defendants did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading. By virtue of the conduct alleged herein, the Third Claim Defendants violated § 12(a)(2) of the Securities Act.

## COUNT IV

### For Violations of §20(a) of the Exchange Act
### <u>Against the Individual Defendants</u>

93.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

94.     The Individual Defendants acted as controlling persons of NQ Mobile within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

95.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

96.     As set forth above, NQ Mobile and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

97.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

98.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)   Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d) Awarding rescissory damages; and

(d)  Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 28, 2013                    Respectfully submitted,

                                           **THE ROSEN LAW FIRM, P.A.**


                                           Laurence M. Rosen, Esq. (LR 5733)
                                           Phillip Kim, Esq. (PK 9384)
                                           Yu Shi, Esq. (YS 2182)
                                           275 Madison Avenue, 34th Floor
                                           New York, NY  10016
                                           Phone: (212) 686-1060
                                           Fax: (212) 202-3827

                                           Counsel for Plaintiff

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against NQ Mobile Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The NQ Mobile Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

| | |
|---|---|
| **First name:** | Phuong |
| **Middle initial:** | |
| **Last name:** | Ho |
| **Address:** |  |
| **City:** | |
| **State:** |  |
| **Zip:** | |
| **Country:** | |
| **Facsimile:** | |
| **Phone:** |  |
| **Email:** | |

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 10/15/2013 | 1,044 | 21.00 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:             **YES**

**Certification for Phuong Ho (cont.)**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.          **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic
Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 10/24/2013

JS 44C/SDNY
REV. 7/2012

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Phuong Ho | See Attachment A. |

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER**    ATTORNEYS (IF KNOWN)
Laurence M. Rosen
The Rosen Law Firm. P.A. 275 Madison Ave 34th Floor NY NY 10016
T: 2126861060

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

15 U.S.C. 77k, 77l(a)(2), 77o 78j(b) and 78t(a), 17C.F.R. Section 240.10b-5

Has this or a similar case been previously filed in SDNY at any time? No ☐ Yes ☒ Judge Previously Assigned ☐

If yes, was this case Vol. ☐ Invol. ☐ Dismissed. No ☐ Yes ☐ If yes, give date _____ & Case No. _____

Is THIS AN INTERNATIONAL ARBITRATION CASE?   No ☐   Yes ☐

*(PLACE AN [x] IN ONE BOX ONLY)*         NATURE OF SUIT

**TORTS**

**ACTIONS UNDER STATUTES**

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 362 PERSONAL INJURY - MED MALPRACTICE | [ ] 610 AGRICULTURE | [ ] 422 APPEAL 28 USC 158 | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT LIABILITY | [ ] 365 PERSONAL INJURY PRODUCT LIABILITY | [ ] 620 OTHER FOOD & DRUG | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 410 ANTITRUST |
| [ ] 130 MILLER ACT | [ ] 320 ASSAULT, LIBEL & SLANDER | [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 | | [ ] 430 BANKS & BANKING |
| [ ] 140 NEGOTIABLE INSTRUMENT | [ ] 330 FEDERAL EMPLOYERS' LIABILITY | | | **PROPERTY RIGHTS** | [ ] 450 COMMERCE |
| [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | [ ] 340 MARINE | **PERSONAL PROPERTY** | [ ] 630 LIQUOR LAWS | [ ] 820 COPYRIGHTS | [ ] 460 DEPORTATION |
| | [ ] 345 MARINE PRODUCT LIABILITY | [ ] 370 OTHER FRAUD | [ ] 640 RR & TRUCK | [ ] 830 PATENT | [ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| [ ] 151 MEDICARE ACT | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | [ ] 650 AIRLINE REGS | [ ] 840 TRADEMARK | |
| [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY | [ ] 380 OTHER PERSONAL PROPERTY DAMAGE | [ ] 660 OCCUPATIONAL SAFETY/HEALTH | **SOCIAL SECURITY** | [ ] 480 CONSUMER CREDIT |
| [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS | [ ] 360 OTHER PERSONAL INJURY | [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY | [ ] 690 OTHER | [ ] 861 HIA (1395ff) | [ ] 490 CABLE/SATELLITE TV |
| | | | | [ ] 862 BLACK LUNG (923) | [ ] 810 SELECTIVE SERVICE |
| [ ] 160 STOCKHOLDERS SUITS | | | **LABOR** | [ ] 863 DIWC/DIWW (405(g)) | [x] 850 SECURITIES/COMMODITIES/EXCHANGE |
| [ ] 190 OTHER CONTRACT | | | [ ] 710 FAIR LABOR STANDARDS ACT | [ ] 864 SSID TITLE XVI | [ ] 875 CUSTOMER CHALLENGE 12 USC 3410 |
| [ ] 195 CONTRACT PRODUCT LIABILITY | **PRISONER PETITIONS** | | [ ] 720 LABOR/MGMT RELATIONS | [ ] 865 RSI (405(g)) | [ ] 890 OTHER STATUTORY ACTIONS |
| [ ] 196 FRANCHISE | | [ ] 510 MOTIONS TO VACATE SENTENCE 20 USC 2255 | [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT | **FEDERAL TAX SUITS** | [ ] 891 AGRICULTURAL ACTS |
| | **ACTIONS UNDER STATUTES** | [ ] 530 HABEAS CORPUS | [ ] 740 RAILWAY LABOR ACT | [ ] 870 TAXES (U.S. Plaintiff or Defendant) | [ ] 892 ECONOMIC STABILIZATION ACT |
| **REAL PROPERTY** | **CIVIL RIGHTS** | [ ] 535 DEATH PENALTY | [ ] 790 OTHER LABOR LITIGATION | [ ] 871 IRS-THIRD PARTY 26 USC 7609 | [ ] 893 ENVIRONMENTAL MATTERS |
| | [ ] 441 VOTING | [ ] 540 MANDAMUS & OTHER | [ ] 791 EMPL RET INC SECURITY ACT | | [ ] 894 ENERGY ALLOCATION ACT |
| [ ] 210 LAND CONDEMNATION | [ ] 442 EMPLOYMENT | | | | [ ] 895 FREEDOM OF INFORMATION ACT |
| [ ] 220 FORECLOSURE | [ ] 443 HOUSING/ ACCOMMODATIONS | | **IMMIGRATION** | | [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| [ ] 230 RENT LEASE & EJECTMENT | [ ] 444 WELFARE | **PRISONER CIVIL RIGHTS** | [ ] 462 NATURALIZATION APPLICATION | | |
| [ ] 240 TORTS TO LAND | [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT | [ ] 550 CIVIL RIGHTS | [ ] 463 HABEAS CORPUS-ALIEN DETAINEE | | [ ] 950 CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 245 TORT PRODUCT LIABILITY | [ ] 446 AMERICANS WITH DISABILITIES -OTHER | [ ] 555 PRISON CONDITION | [ ] 465 OTHER IMMIGRATION ACTIONS | | |
| [ ] 290 ALL OTHER REAL PROPERTY | [ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner) | | | | |

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

DEMAND $_____   OTHER _____   JUDGE _____   DOCKET NUMBER_____

*Check YES only if demanded in complaint*
JURY DEMAND: ☒ YES ☐ NO        NOTE:   Please submit at the time of filing an explanation of why cases are deemed related.

| | | | | | | |
|---|---|---|---|---|---|---|
| (PLACE AN x IN ONE BOX ONLY) | | | ORIGIN | | | |

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from (Specify District)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge Judgment

☐ a. all parties represented

☐ b. At least one party is pro se.

---

(PLACE AN x IN ONE BOX ONLY)     **BASIS OF JURISDICTION**     *IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1332, 1441)*

☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☒ 3 FEDERAL QUESTION (U.S. NOT A PARTY)   ☐ 4 DIVERSITY

---

### CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

---

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Phuong Ho
C/O The Rosen Law Firm P.A.
275 Madison Aven 34th FL
New York, NY 10016

---

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

---

DEFENDANT(S) ADDRESS UNKNOWN
    REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

See Attachment A.

---

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   ☐ WHITE PLAINS   ☐ MANHATTAN
(DO NOT check either box if this a PRISONER PETITION/PRISONER CIVIL RIGHTS COMPLAINT.)

DATE 10/28/2013   SIGNATURE OF ATTORNEY OF RECORD   ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
RECEIPT #                                      [ ] YES (DATE ADMITTED Mo. 5   Yr. 2003 )
                                               Attorney Bar Code # PH9384

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)