UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

PHUONG HO,

                Plaintiff,              :

             -against-          :      13 Civ. 7608 (WHP)

NQ MOBILE, INC. *et al.*,         :

               Defendants.     :

------------------------------------X

WEI PANG,                      :

                Plaintiff,             :

             -against-          :      13 Civ. 7685 (WHP)

NQ MOBILE, INC. *et al.*,         :

               Defendants.     :

------------------------------------X

LEW HILLER,                 :

                Plaintiff,             :

             -against-          :      13 Civ. 7713 (WHP)

NQ MOBILE, INC. *et al.*,         :

               Defendants.     :

------------------------------------X

TAHSEEN GHAURI,            :

                Plaintiff,             :

             -against-          :      13 Civ. 7637 (WHP)

NQ MOBILE, INC. *et al.*,         :

               Defendants.     :

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/9/14

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
JAMES MARTIN,                                    :

                        Plaintiff,              :

                        -against-              :        13 Civ. 8125 (WHP)

NQ MOBILE, INC. et al.,                         :        MEMORANDUM & ORDER

                        Defendants.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
```

WILLIAM H. PAULEY III, District Judge:

Various plaintiffs in these federal securities class action lawsuits against NQ

Mobile, Inc. move for appointment as lead plaintiff and lead counsel under the Private Securities

Litigation Reform Act ("PSLRA"). Following publication of the required notice, nine separate

entities filed motions. Of those nine, five investor groups later withdrew their motions or

otherwise chose not to oppose another movant.[1] As a result, four investor plaintiffs vie for

appointment: (1) the Volin Group, represented by Scott+Scott, LLP; (2) the NQ Group (the

"Machado Group"), represented by The Rosen Law Firm, P.A. and Pomerantz, Grossman,

Hufford, Dahlstrom & Gross LLP; (3) the NQ Mobile Investor Group ("Hsieh Group"),

represented by Kaplan Fox & Kilsheimer LLP and Kessler Topaz Metlzer & Check LLP; (4) and

Russell Levin, represented by Robbins Geller Rudman & Dowd LLP. For the reasons that

follow, the Volin Group is appointed lead plaintiff, and Scott+Scott is appointed lead counsel.

---

[1] These were the NQ Investor Group, represented by Cohen Milstein Sellers & Toll PLLC; a second group named the NQ Investor Group ("The Dellavia Group"), represented by Brower Piven; the Gulotta Family Group, represented by Block & Leviton and Wolf Haldenstein Adler Freeman & Herz LLP; the Sandy Liebhard Profit Sharing Plan, represented by Glancy Binkow & Goldberg LLP; and Shuja Bhatti, represented by Rigrodsky & Long, P.A.

I. Consolidation

Under the PSLRA, a court must decide whether to consolidate related actions prior to selecting a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). Everything in these actions militates toward consolidation. First, the parties agree these actions should be consolidated. Second, the complaints allege that NQ Mobile issued false and misleading statements about its financial condition which had the effect of inflating its stock price from May 5, 2011 to October 24, 2013. The complaints all arise out of the same course of conduct by the same defendants during the same class period. Consolidation also serves the interests of judicial economy. Accordingly, these actions are consolidated.

II. Appointment of Lead Plaintiff

A. Applicable Law

Where, as here, there is more than one putative class action asserting substantially the same claims and a motion for consolidation has been filed, the PSLRA requires a court to "appoint the most adequate plaintiff as lead plaintiff for the consolidated actions" as soon as practicable after consolidation. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The PSLRA creates a rebuttable presumption that the lead plaintiff should be the plaintiff who (a) has either filed a complaint or moved for lead plaintiff status; (b) has the largest financial interest in the relief sought; and (c) otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

In determining which plaintiff has the greatest financial interest, courts consider four factors: (1) the number of shares purchased during the class period; (2) the net shares purchased during the class period; (3) the net funds expended during the class period; and (4) the approximate losses suffered. Baydale v. Am. Express Co., 09 Civ. 3016 (WHP), 2009 WL

3

2603140, at \*2 (S.D.N.Y. Aug. 14, 2009). The magnitude of the loss is the most significant factor. See Kaplan, 240 F.R.D. at 93. In calculating the size of the loss, courts in this district prefer the last-in-first-out ("LIFO") methodology, in which the last shares purchased are assumed to be the first shares sold. See Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp., 275 F.R.D. 187, 190 (S.D.N.Y. 2011). The plaintiff with the greatest financial interest in the litigation is entitled to a presumption in favor of appointment as lead plaintiff so long as that plaintiff otherwise satisfies the requirements of Rule 23. Baydale, 2009 WL 2603140, at \*2.

A potential lead plaintiff must make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23. Baydale, 2009 WL 2603140, at \*2. The typicality requirement is satisfied where a plaintiff has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues. See In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992). In considering the adequacy of a proposed lead plaintiff, a court must consider whether (1) the lead plaintiff's claims conflict with those of the class and (2) class counsel is qualified, experienced, and generally able to conduct the litigation. See In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y. 2004). "Other members of the purported class may try to rebut the statutory presumption by showing that the lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of unique defenses." Baydale, 2009 WL 2603140, at \*2; see also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.")

4

## B. The Movants

| Movant | Total Shares Purchased | Net Shares Purchased | Net Expenditures | LIFO Loss | Firm |
|---|---|---|---|---|---|
| Volin Group | 94,108 | 94,108 | $1,994,656 | $1,078,672 | Scott+Scott, LLP |
| Machado Group | 66,000 | 66,000 | $1,467,400 | $602,410 | Rosen Law Firm; Pomerantz, Grossman, Hufford, Dahlstrom & Gross LLP |
| Hsieh Group | 30,292 | 30,292 | $696,880 | $359,897 | Kaplan Fox & Kilsheimer; Kessler Topaz Meltzer & Check LLP |
| Rusell Levin | 3,400 | 3,400 | $55,800 | $22,700 | Robbins Geller Rudman & Dowd LLP |

### 1. The Volin Group

The Volin Group is composed of the Allene E. Mossman Trust, EJ Partners,[2] HR Volin IRA, AM Volin IRA, EM Volin Roth IRA, JE Volin Roth IRA, EM Volin Trust, EM Volin IRA, and JE Volin IRA—all trusts and individual retirement accounts ("IRAs") held by Herbert R. Volin, his wife Allene E. Mossman, and his daughters, Judy E. Volin and Eva M. Volin. Herbert Volin manages the trusts and IRAs. Collectively, these entities demonstrated a LIFO loss of $1,078,672, far larger than any other movant. The Volin Group also surpasses the other movants in other relevant factors, such as shares purchased, net shares purchased, and net expenditures. Therefore, it is the presumptive lead plaintiff and should be selected unless it fails to satisfy the adequacy or typicality requirements.

---

[2] EJ Partners is a general partnership comprised of the Eva. M. Volin Trust and the Judy E. Volin Trust. (Decl. of Joseph P. Guglielmo, dated Jan. 23, 2014, ECF No. 56 ("Second Volin Decl."), Ex. 1, at 1).

a. <u>Volin's Standing</u>

"[N]amed plaintiffs in a class action must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent. Unless they can thus demonstrate the requisite case or controversy between themselves personally and defendants, none may seek relief on behalf of himself or any other member of the class." <u>W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP</u>, 549 F.3d 100, 106 n.5 (2d Cir. 2008) (internal quotation marks and alterations omitted) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 502 (1975)). "[A] mere power-of-attorney—i.e., an instrument that authorizes the grantee to act as an agent or an attorney-in-fact for the grantor—does not confer standing to sue in the holder's own right." <u>Huff</u>, 549 F.3d at 108. Rather, a plaintiff must "have legal title to, or a proprietary interest in, the claim." <u>Huff</u>, 549 F.3d at 108.

The competing movants argue that Herbert Volin has failed to establish standing over the shares bought and sold by other members of the Volin Group. Specifically, they argue that Herbert Volin has not established that he had unfettered decisionmaking authority over the purchase and sale of NQ stock by other members of the Group. Competing movants also argue that the Volin Group is improperly claiming losses of persons not seeking appointment as lead plaintiff.

These arguments are based in part on a misreading of the Volin Group's motion. There is no aggregation problem because the only claimed losses are those of the trusts and IRAs, which are collectively seeking appointment as lead plaintiff. The claims belong to the

trusts themselves as the real parties in interest. The trusts act through their respective trustees,[3] and in this case three of the trustees assigned their rights to initiate and oversee litigation to the fourth, Herbert Volin, so that he could initiate litigation on behalf of all the trusts and IRAs. (Second Volin Decl., Ex. 1, at 1). The assignments to Herbert Volin are not part of an attempt to create third-party standing. Rather, they confer authority on Herbert Volin to manage the litigation on behalf of the other trustees.

Nevertheless, the bare assignments leave it to the reader to infer how the assignors and assignee are related to the trusts and IRAs. They do not explain that the assignments are made in each assignor's capacity as trustee or owner of a particular trust or IRA. For example, one assignment reads:

> I, Allene E. Mossman, the undersigned assignor ("Assignor"), hereby assign[], transfer[], and set[] over to Herbert Volin all rights, title and interest of the Assignor in any and all claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations under the federal securities laws of the United States of America in connection with the purchase of the publicly traded securities of NQ Mobile, Inc. Further, the Assignor hereby appoints Herbert R. Volin her true and lawful attorney-in-fact for the purpose of exercising all powers relating to such causes of action. Herbert R. Volin agrees to remit any proceeds received on behalf of this assignment to the Assignor.

(Decl. of Joseph P. Guglielmo in Support of Volin Group's Motion, dated Dec. 27, 2013, ECF No. 42 ("First Volin Decl."), Ex. 2, at 3.) And Herbert Volin does not explain that he is acting as trustee rather than as an unnamed plaintiff, though that can be inferred from the fact that no

---

[3] Courts have historically relied on trustees to act on behalf of their trusts. Huff, 549 F.3d at 110; see, e.g., In re Worldcom Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), 2005 WL 1793543, at *1 (S.D.N.Y. July 29, 2005) (noting lead plaintiff status of sole trustee for the New York State Common Retirement Fund); In re Vivendi Universal, 381 F. Supp. 2d 158, 164 n.2 (S.D.N.Y. 2003) (noting trustee of trust served as co-lead plaintiff); In re N.Y. Hous. Dev. Corp., No. 86 Civ. 3274 (RJW), 1987 WL 494921, at *7 (S.D.N.Y. May 11, 1987) (holding that trustees of trusts that purchased securities had standing to bring suit on behalf of beneficiaries of trusts); Chem. Bank v. Shearson Lehman Bros., Inc., No. 91 Civ. 4915 (LMM), 1992 WL 183760, at *1 (S.D.N.Y. July 21, 1992) (holding that trustee had standing to bring securities claim on behalf of trust).

individual person is named in the Volin Group's moving papers. Instead, he declares: "I Herbert R. Volin, hereby certify that . . . I am duly authorized to institute legal action on behalf of the [Volin Group Trusts and IRAs], as demonstrated by the assignments of Allene E. Mossman, Eva M. Volin, and Judy E. Volin . . . ." (First Volin Decl., Ex. 2, at 2.)

The Volin Group sought to clarify these omissions by appending to their Reply Memorandum a joint declaration in which each of the assignors states her role as trustee, owner, or partner of the various entities and explains that the intent of assignment was to give Herbert R. Voiln "the right to retain counsel on behalf of the members of the Volin Group, to have the trusts and IRAs collectively seek appointment as lead plaintiff, to oversee litigation of the above-referenced actions, and to otherwise act on behalf of the Volin Group for the purposes of this litigation." (Second Volin Decl., Ex. 1, at 1–2.)

The additional joint declaration was unnecessary. "The PSLRA's presumption that a movant is most adequate is rebuttable only upon proof by a member of the purported plaintiff class that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Seidel v. Noah Educ. Holdings Ltd., No. 08 Civ. 9203 (RJS), 2009 WL 700782, at *4 (S.D.N.Y. Mar. 9, 2009) (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)). In Seidel, Judge Sullivan appointed a presumptive lead plaintiff notwithstanding the absence of "detailed documentation in support of his authority to represent [a trust]" because the plaintiff had certified his authority under penalty of perjury, and that was sufficient to "make a preliminary showing that the adequacy requirements [had] been met." Seidel, 2009 WL 700782, at *4. Here, Herbert Volin has sworn he has authority to represent the members of the Volin

Group and initiate litigation on their behalf. (First Volin Decl., Ex. 2, at 2.) Competing movants offer no proof to the contrary. That is enough at this stage.

Competing movants also argue that the Volin Group includes several IRAs, which are not proper plaintiffs. However, the Volin Group's IRA members are not an obstacle to the Group's appointment as lead plaintiff for two reasons: first, even without the IRAs, the Volin Group suffered the largest financial loss;[4] second, the complaint could be amended easily to exclude the IRAs. Federal courts "have the ability to consider motions to disqualify, remove, withdraw, substitute, and add lead plaintiffs throughout the litigation of a securities class action." In re SLM Corp. Sec. Litig., 258 F.R.D. 112, 114 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). While substituting the real parties in interest for the IRAs might run afoul of the PSLRA's 60-day filing deadline,[5] dropping them altogether would not.

b. Improper "Group"

"The majority of courts, including those in this District, . . . permit[] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). "Accordingly, a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs. Factors that courts have considered when evaluating whether a group's members will function cohesively and separately from their lawyers include evidence of:

---

[4] The Volin Group trusts claim $612,568.68 in losses—a larger amount than any competing movant and a far larger amount than the next qualified movant.

[5] See In re SLM, 258 F.R.D. at 117 n.2 (refusing to substitute a plaintiff because "under the PSLRA the Court can only consider those class members that filed a motion sixty days after the publication of notice as candidates for appointment as lead plaintiff").

(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." Varghese, 589 F. Supp. 2d at 392.

The competing movants argue that the Volin Group has presented no evidence to show that its members can function cohesively and effectively control litigation independent of its lawyers. The Volin Group responds by citing In re McDermott International, Inc. Securities Litigation, 08 Civ. 9943 (DC), 2009 WL 579502, at *4–5 (S.D.N.Y. Mar. 6, 2009), and Beckman v. ener1, Inc., No. 11 Civ. 5794 (PAC), 2012 WL 512651, at *3–4 (S.D.N.Y. Feb. 15, 2012), for the proposition that family members do not need to make any evidentiary showing that they can function cohesively. Although the individual Volin family members are not named plaintiffs, the Volin Group's original moving papers described the named trusts and individual retirement accounts as being "held by Herbert R. Volin ('Mr. Volin'), his wife Allene E. Mossman, and his daughters, Judy E. Volin and Eva M. Volin." (Mem. in Supp. of Volin Grp.'s Mot., dated Dec. 27, 2013, ECF No. 41, at 1 n.1.) The fact that individual family members delegated to Herbert Volin the power to manage the litigation on their behalf shows that the Volin Group has a plan for efficient management of the action. See In re Milestone Scientific Sec. Litig, 183 F.R.D. 404, 418 (D.N.J. 1998) (approving the dominance of a single voice within a group as a sign that the group's interests will be aligned and control will be concentrated).

### 2. The Machado Group

The Machado Group is a group of unrelated investors: Joaquin Machado, Gregory Edelson, and Joey Yu. Although such groups are permitted to act as lead plaintiffs, they "must proffer an evidentiary showing that unrelated members of a group will be able to function

cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." Varghese, 589 F. Supp. 2d at 392. Here, the Machado Group offers no evidence of its members' relationships or ability to manage litigation.

### 3. Hsieh Group

The Hsieh Group includes John Hsieh, Diego Villanueva, and Opportunity Investments LLC. Russell Levin contends that the Hsieh Group has not proffered sufficient evidence of cohesion. In their initial declaration, the three Hsieh Group members jointly swore they were willing and able to confer independently of counsel, that they had each other's contact information, and that they had discussed mechanisms for resolving internal disputes. However, the declaration was silent as to any pre-existing relationship among the group members, and the mere promise that group members could call each other and develop voting mechanisms is not sufficient to show the cohesiveness necessary to achieve appointment as lead plaintiff. See In re LightInTheBox Holding Co., Sec. Litig., No. 13 Civ. 6016 (PKC), 2013 WL 6145114, at *1 (S.D.N.Y. Nov. 21, 2013) (declining to appoint a group of unrelated investors that had held a pre-filing conference call and established procedures for overseeing counsel, communicating with one another, and voting); Teran v. Subaye, Inc., No. 11 Civ. 2614 (NRB), 2011 WL 4357362, at *4 (S.D.N.Y. Sept. 16, 2011) (rejecting a similar application and specifically noting the group's silence as to any past relationship). A declaration that an unrelated group has "implemented communication protocols to enable [them] to confer via phone and/or email" is insufficient to show that the Group would be able to effectively manage litigation. Pipefitters, 275 F.R.D. at 191–92. For that reason, the Hsieh Group is not qualified to serve as lead plaintiff.

11

4. Russell Levin

Russell Levin is an individual investor. The principal objection to his appointment is that he has the smallest financial interest of any movant.

C. Analysis

The Volin Group has the largest LIFO loss and is therefore the presumptive plaintiff. Although its initial declaration was not specific on the relationship between the assignments and the trusts, no competing movant has offered proof rebutting the Volin Group's declarations, which are sufficient to suggest they have standing and otherwise satisfy the requirements of Rule 23. Accordingly, this Court appoints the Volin Group as lead plaintiff.

III. Appointment of Lead Counsel

The Volin Group's counsel, Scott+Scott, is competent and experienced. Accordingly, this Court grants Scott+Scott's motion to be appointed as lead counsel.

CONCLUSION

For the foregoing reasons, the Volin Group is appointed lead plaintiff, and Scott+Scott is appointed lead counsel. These actions are consolidated under the caption, "In re NQ Mobile, Inc. Securities Litigation, No. 13 Civ. 7608."

Dated: April 9, 2014
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record*

12