CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: +1-212-474-1000
FACSIMILE: +1-212-474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: +44-20-7453-1000
FACSIMILE: +44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1296

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
C. ALLEN PARKER
SUSAN WEBSTER
DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR

SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DAVID J. KAPPOS
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN

GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO

KEVIN J. ORSINI
MATTHEW MORREALE
JOHN D. BURETTA
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA
STEPHEN M. KESSING
LAUREN A. MOSKOWITZ
DAVID J. PERKINS
JOHNNY G. SKUMPIJA
J. LEONARD TETI, II
D. SCOTT BENNETT
TING S. CHEN
CHRISTOPHER K. FARGO
KENNETH C. HALCOM
DAVID M. STUART

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
PAUL C. SAUNDERS

October 3, 2014

In re NQ Mobile, Inc. Securities Litigation, Civ. A. No. 13-cv-7608-WHP

Dear Judge Pauley:

    We represent PricewaterhouseCoopers International Limited ("PwCIL"), a defendant in the above-captioned matter. PwCIL was served with the summons and the Consolidated Complaint ("Complaint" or "Compl.") on July 24, 2014. Pursuant to the September 5, 2014 Order and Your Honor's individual practice rules, we respectfully request a pre-motion conference for PwCIL's motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Below, we summarize PwCIL's grounds for a motion to dismiss the Complaint.

    The PwC network consists of member firms that are separate legal entities, each organized under the laws of its own jurisdiction. PwCIL is an English private company limited by guarantee. PwCIL is the coordinating entity for the PwC network and is itself a separate legal entity from each of the PwC member firms in the network. Unlike the PwC member firms, PwCIL does not provide professional services. PwCIL provides certain coordination functions for the PwC member firms, and focuses on strategic initiatives for the network.

    PricewaterhouseCoopers Zhong Tian LLP ("PwC China" or "PwC-ZT"), a member firm in the PwC network based and operating in China, issued audit opinions on NQ Mobile's 2011 and 2012 financial statements. (Compl. ¶¶ 34–35.) PwCIL is a separate legal entity from PwC China. PwCIL does not own or control PwC China, and PwC China is not PwCIL's agent. Nor does PwCIL supervise or participate in the professional services provided by PwC China.

    The Complaint asserts a Section 20(a) "control person" claim against PwCIL, based on a claim that PwC China violated Section 10(b) and Rule 10b-5 in its audits of NQ Mobile's 2011 and 2012 financial statements. The Complaint baldly alleges

that "PwC-ZT performed the audit services for NQ as a *de facto* agent of PwC-IL and provided those services on the authority of, at the direction of, under the control of, and for the benefit of PwC-IL". (Compl. ¶ 36.) The Complaint goes on to assert in a conclusory fashion that "PwC-IL is a controlling person of its member firm, PwC-ZT, as well as of its employees, and is liable in that capacity for PwC-ZT's wrongful conduct as alleged herein." (*Id.* ¶ 44.)

The Complaint against PwCIL should be dismissed because it does not contain any well-pled facts supporting "culpable participation" by PwCIL in PwC China's audits of NQ Mobile. The Second Circuit has held that Section 20(a) requires "that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person". *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996). Moreover, a plaintiff must plead "culpable participation" with particularity under the PSLRA. *See, e.g., Penn. Pub. Sch. Emp. Ret. Sys. v. Bank of Am.*, 874 F. Supp. 2d 341, 368 (S.D.N.Y. 2012) (Pauley, J.); *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 560 (S.D.N.Y. 2010) (Pauley, J.); *In re Yukos Oil Co. Sec. Litig.*, No. 04 Civ. 5243 (WHP), 2006 WL 3026024, at *23 (S.D.N.Y. Oct. 25, 2006) (Pauley, J.); *In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2004 WL 2190357, at *16 (S.D.N.Y. Sept. 30, 2004) (Pauley, J.). "[P]laintiffs must plead with particularity giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaged in fraudulent conduct." *SLM Corp. Sec. Litig.*, 740 F. Supp. 2d at 559 (citations omitted). Unlike cases in which Section 20(a) claims are brought against officers and directors of corporations who oversee day-to-day activities of the company, Lead Plaintiffs' claims here concern the coordinating entity of an international accounting network with "member firms located around the world". (Compl. ¶ 34.) The Complaint's allegations with respect to PwCIL concern standards, guidelines and resources adopted by member firms throughout the PwC network, but they do not describe a structure wherein PwCIL controlled PwC China's audits or would have knowledge of PwC China's audit of NQ Mobile, or wherein PwCIL should have been aware of alleged fraud at an audit client of PwC China. Indeed, Lead Plaintiffs set out no facts supporting their conclusory allegation that PwCIL had direct involvement in the specific audit at issue, PwC China's audit of NQ Mobile, let alone that PwCIL participated knowingly in the alleged fraud. "[T]o withstand a motion to dismiss, a section 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness." *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 122–23 (S.D.N.Y. 2013). There are simply no allegations in the Complaint concerning PwCIL's state of mind.

Instead, the Complaint does little more than describe a general relationship between PwC-ZT and PwCIL that includes consistent policies and standards for the accounting network. (*See* Compl. ¶¶ 37–43.) For example, Lead Plaintiffs make the generalized allegation that "the audit services provided by PwC-ZT are dictated directly by PwC-IL" (*id.* ¶ 39), but they derive this conclusion from a report saying merely that "the PwC global network of firms . . . agree to follow a baseline audit methodology" (*id.*). Lead Plaintiffs go on to allege that "PwC-IL had direct oversight and involvement in its member firms' audits of NQ" (*id.* ¶ 218), but they provide no facts to support that

general assertion beyond allegations that PwCIL has an Audit Practice Committee that is charged with enforcing guidelines on professional standards throughout the global network and approving audit engagements and fees (*id.* ¶¶ 40–41). Such allegations have been found "inadequate" to demonstrate control by an international accounting network over a member firm. *See In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 395 (S.D.N.Y. 2003) ("To the extent plaintiffs attempt to allege facts in support of the notion that AWSC [the umbrella entity] directed the 'management and policies' of Andersen Singapore [entity firm], their allegations are inadequate. At most, the Amended Complaint alleges generally that AWSC set 'professional standards and principles' under which the individual offices operated. However, the Amended Complaint is bereft of any allegations that AWSC, pursuant to an agreement or otherwise, was able to control or in any way influence the particular audits conducted or opinions offered by its individual member firms."). Because the Complaint fails to adequately plead "culpable participation" by PwCIL in PwC China's audits of NQ Mobile, it fails to state a Section 20(a) claim against PwCIL and should be dismissed as to PwCIL.

Separately, control person claims against PwCIL should be dismissed if the Complaint fails to state an underlying claim against PwC China. A Section 20(a) claim cannot stand without a primary violation by the allegedly controlled person. *See Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, No. 13 Civ. 1094 (ER), 2014 WL 3605540, at *24 (S.D.N.Y. July 21, 2014) ("It is axiomatic that liability for a Section 20(a) violation is derivative of liability for a Section 10(b) violation.") (citations omitted). Our review of the Complaint indicates that it fails to state an underlying claim against PwC China. We suggest that briefing on this particular ground for dismissal of PwCIL—whether the Complaint fails to state a primary violation by PwC China—be deferred until PwC China is served and appears through counsel.

Respectfully,

Antony L. Ryan

Hon. William H. Pauley III
    Southern District of New York
        United States Courthouse
            500 Pearl Street, Room 1920
                New York, NY 10007

Delivery by Hand

Copy to:

All Counsel of Record by ECF Filing