UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE NQ MOBILE, INC. SECURITIES
LITIGATION

Master File No. 13-CV-7608 (WHP)

**ORAL ARGUMENT REQUESTED**

**DEFENDANT PRICEWATERHOUSECOOPERS INTERNATIONAL
LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Thomas G. Rafferty
Antony L. Ryan
Samira Shah
   CRAVATH, SWAINE & MOORE LLP
      Worldwide Plaza
         825 Eighth Avenue
            New York, NY 10019
               (212) 474-1000
                  trafferty@cravath.com
                  aryan@cravath.com
                  sshah@cravath.com

*Attorneys for Defendant
PricewaterhouseCoopers International Limited*

**Table of Contents**

**Page**

Preliminary Statement................................................................................................1

Background ................................................................................................................2

Argument ..................................................................................................................4

I.      PLAINTIFFS HAVE NOT ADEQUATELY PLEADED CULPABLE
        PARTICIPATION BY PWCIL. ................................................................5

        A.      Plaintiffs Are Required To Plead Culpable Participation with Specificity.............6

        B.      Plaintiffs Make No Attempt To Plead Culpable Participation by PwCIL. .............9

II.     PLAINTIFFS HAVE NOT ADEQUATELY PLEADED THAT PWCIL
        CONTROLLED PWC CHINA...............................................................12

III.    THERE CAN BE NO SECTION 20(A) VIOLATION BY PWCIL WITHOUT A
        PRIMARY 10(B) VIOLATION BY PWC CHINA. ........................................17

IV.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE. ..........................18

Conclusion ..............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) .................................14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) .....................................5, 7

*Boguslavsky v. Kaplan*, 159 F.3d 715 (2d Cir. 1998) ......................................................................7

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir. 2014)...........................................................................................................................7, 17

*Cohen v. Stevanovich*, 722 F. Supp. 2d 416 (S.D.N.Y. 2010) ......................................................13

*Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228 (S.D.N.Y. 2012) .....................................9

*Floyd v. Liechtung*, No. 10 Civ. 4254 (PAC), 2013 WL 1195114 (S.D.N.Y. Mar. 25, 2013)..........................................................................................................................13

*Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012).......................................................18

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) ...........................................................8

*In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391 (S.D.N.Y. 2003) ....................13, 14, 15

*In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004) ............................................................................................................6, 8

*In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003)...............................9

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011) ...............................8

*In re Lernout & Haspie Sec. Litig.*, 230 F. Supp. 2d 152 (D. Mass. 2002) ..................................14

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ............................................................................................................................................9

*In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005)..................................................9

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) ......................................................7

*In re ShengdaTech, Inc. Sec. Litig.*, No. 11 Civ. 1918 (LGS), 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014)............................................................................................9

*In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542 (S.D.N.Y. 2010) ....................................6, 8, 13

*In re Tronox, Inc. Sec. Litig.*, No. 09 Civ. 6220 (SAS), 2010 WL 2835545
(S.D.N.Y. June 28, 2010)..................................................................................9

*In re Yukos Oil Co. Sec. Litig.*, No. 04 Civ. 5243 (WHP), 2006 WL 3026024
(S.D.N.Y. Oct. 25, 2006) .............................................................................6, 8

*Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011)..........................11

*Karmilowicz v. Hartford Fin. Servs. Grp.*, 494 F. App'x 153 (2d Cir. 2012) ................................3

*Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973) (en banc) ..................................................7

*Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221 (S.D.N.Y. 2006)....................................8

*McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105
(S.D.N.Y. 2013)................................................................................10, 11, 12

*Meridian Horizon Fund, L.P. v. Tremont Grp. Holdings, Inc.*, No. 09 Civ.
3708 (TPG), 2012 WL 6168151 (S.D.N.Y. Dec. 11, 2012) ......................................9

*New Orleans Employees Ret. Sys. v. Celestica, Inc.*, No. 10-4702-cv, 2011
WL 6823204 (2d Cir. Dec. 29, 2011) ....................................................8, 13

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03 Civ. 0613
(GBD), 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ..............................................14

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341
(S.D.N.Y. 2012) .............................................................................................6, 8

*Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880 (3d Cir. 1975)........................................................7

*Ross v. Lloyds Banking Grp., PLC*, 546 F. App'x 5 (2d Cir. 2013) .............................................7

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996)................................................6, 7, 12

*Solow v. Citigroup, Inc.*, 507 F. App'x 81 (2d Cir. 2013) ............................................................7

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
No. 13 Civ. 1094 (ER), 2014 WL 3605540 (S.D.N.Y. July 21, 2014)............................10, 11

*Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329 (DC), 2008 WL
5110919 (S.D.N.Y. Nov. 26, 2008) ..................................................................14

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir.
2001) ..............................................................................................................8

**Statutes & Rules**

17 C.F.R. § 240.12b-2................................................................................................12

Federal Rules of Civil Procedure 9(b) and 12(b)(6) ........................................................................1

Private Securities Litigation Reform Act of 1995 ("PSLRA"),
  15 U.S.C. § 78u-4(b)(2)(A)...............................................................................................8, 12

Rule 10b-5, 17 C.F.R. § 240.10b-5 ...................................................................................................1

Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).......................... passim

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), defendant PricewaterhouseCoopers International Limited ("PwCIL") respectfully submits this memorandum of law in support of its motion to dismiss the Consolidated Amended Class Action Complaint filed on October 24, 2014 (the "Complaint" or "Compl.").

## Preliminary Statement

PwCIL had no involvement in the underlying facts and therefore does not belong in this case.  Indeed, the Complaint contains no factual allegations connecting PwCIL to the NQ Mobile, Inc. financial statements.  Lead Plaintiffs fail to state a claim against PwCIL because they rely on a legal theory that is inconsistent with Second Circuit precedent and has been rejected by this Court, and they fail to plead the facts necessary to meet either the "culpable participation" or "control" elements of Section 20(a) of the Exchange Act.

PwCIL is an English company that acts as the coordinating entity for the international network of PricewaterhouseCoopers firms.  PwCIL is named as a defendant in a Section 20(a) "control person" claim, based on an underlying claim that PricewaterhouseCoopers Zhong Tian LLP ("PwC China")[1] violated Section 10(b) and Rule 10b-5 in PwC China's audits of NQ Mobile's 2011 and 2012 financial statements, and that PwCIL "controlled" PwC China.

Lead Plaintiffs do not allege—nor could they—that PwCIL had any involvement in PwC China's audits of NQ Mobile.  There is no allegation that PwCIL knew anything about NQ Mobile, let alone that PwCIL directed PwC China's audits of NQ Mobile or assisted in any way in conducting the audits.  Consequently, Lead

---

[1] PricewaterhouseCoopers Zhong Tian LLP is referred to in the Complaint as PwC-ZT.  For ease of reference, this memorandum uses "PwC China".

Plaintiffs have not alleged facts adequate to support a claim that PwCIL was a "culpable participant" in the alleged fraud by PwC China.

This deficiency in the Complaint disposes of the claim against PwCIL. As this Court has repeatedly held, "culpable participation" is a necessary element of a *prima facie* Section 20(a) claim and must be pleaded with particularity. Indeed, Lead Plaintiffs concede that their claim can survive only if this Court rejects the legal standard it has applied in prior cases. The Court should adhere to its previous rulings, as this Court's approach to pleading "culpable participation" follows numerous decisions of the Second Circuit and is consistent with decisions by the overwhelming majority of judges in this District. Lead Plaintiffs have also failed to plead facts showing that PwCIL had control over PwC China because their allegations do not support the inference that PwCIL controlled PwC China's audit of NQ Mobile. For each of these reasons, the claim against PwCIL should be dismissed.

## Background

Lead Plaintiffs cite two sources for the allegations in their Complaint concerning PwCIL: (1) the PwCIL website (*see* Compl. ¶¶ 37, 43), and (2) the 2013 Transparency Report,[2] issued by PricewaterhouseCoopers LLP ("PwC U.S."), the member firm of the PricewaterhouseCoopers network in the United States (*see id.* ¶¶ 38-42). For purposes of this motion to dismiss, the Complaint is therefore deemed to

---

[2] European Parliament and Council Directive 2006/43/EC, art. 45(5)(e), 2006 O.J. (L. 157) 87, 105, requires audit firms from outside the European Union (E.U.) who register within the E.U. to publish an annual "transparency report". PwC U.S. is registered in the E.U. because it has a number of U.S.-based audit clients who have issued securities on European exchanges. (*See* Ryan Decl. Ex. B at 13.) The Transparency Report was formerly accessible online at http://www.pwc.com/en_US/us/about-us/assets/pwc-llp-fy13-transparency-report.pdf.

incorporate those documents, which are attached as Exhibits A and B, respectively, to the accompanying Declaration of Antony L. Ryan.  *See Karmilowicz v. Hartford Fin. Servs. Grp.*, 494 F. App'x 153, 156 (2d Cir. 2012).

The PwC network consists of "more than 150 member Firms", each of which is "a separate legal entity" organized under the laws of its own jurisdiction.  (Ryan Decl. Ex. B at 2.)  Each firm "is a member of PricewaterhouseCoopers International Limited (PwCIL), a UK private company limited by guarantee".  (*Id.*)  Both PwC U.S., which is not named as a defendant in this action, and PwC China are member firms of PwCIL.

Unlike the PwC member firms, PwCIL does not provide professional services.  "PwCIL does not practice accounting, provide auditing or other professional services, or conduct business with third parties."  (*Id.* at 3.)  "Rather, its purpose is to act as a coordinating entity for member Firms in the PwC network."  (*Id.*)  PwCIL focuses on areas such as "strategy, brand, risk, and quality" and where appropriate "develop[s] and implement[s] policies and initiatives" for the benefit of all of the member firms.  (*Id.*) PwC member firms can "use the PwC name" and can draw on the "methodologies of the PwC network", but in return must "agree[] to abide by certain common policies and maintain the standards of the PwC network".  (*Id.*)

PwCIL does not own or control PwC China, and PwC China is not PwCIL's agent.  The Transparency Report states:  "A member Firm cannot act as agent of PwCIL or any other member Firm, cannot obligate PwCIL or any other member Firm, and is liable only for its own acts or omissions and not those of PwCIL or any other member Firm."  (*Id.*)  The Report continues:  "PwCIL cannot act as an agent of any

member Firm, cannot obligate any member Firm, and is liable only for its own acts or omissions." (*Id.*)  The PwCIL website includes similar statements.  (Ryan Decl. Ex. A.)

Neither the PwCIL website nor the PwC U.S. Transparency Report states or suggests in any way that PwCIL supervises or participates in the professional services provided by PwC China or any of the other PwC member firms.  Lead Plaintiffs allege that PwC China "performed the audit services for NQ as a *de facto* agent of PwC-IL and provided those services on the authority of, at the direction of, under the control of, and for the sole benefit of PwC-IL".  (Compl. ¶ 36.)  But this conclusory allegation is unsupported by the allegations in the following seven paragraphs based on the PwCIL website and the Transparency Report (*see id.* ¶¶ 37-43), and in fact is contradicted by the documents on which Lead Plaintiffs rely, which state expressly that PwC China and the other PwC member firms are not agents of PwCIL, and PwCIL cannot direct or control the professional services that PwC China and the other PwC member firms provide.  (*See* Ryan Decl. Ex. B at 2-3; Ryan Decl. Ex. A.)

## Argument

Lead Plaintiffs have failed to plead the elements required for "control person" liability.  Under Section 20(a) of the Securities Exchange Act of 1934, "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable[,] . . . unless the controlling person acted in good faith and did not directly or indirectly induce the acts or acts constituting the violation or cause of action".  15 U.S.C. § 78t(a).  "To establish a prima facie case of control person liability, a

4

plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (internal quotation marks and citation omitted).

PwCIL contests all three elements of control person liability. As discussed at the October 30, 2014 pre-motion conference, PwCIL defers briefing on the element of a primary violation by PwC China until such time as PwC China is served and appears before the Court. (Tr. 11-13, Oct. 30, 2014, ECF No. 126.) On this motion, PwCIL demonstrates that Lead Plaintiffs have not adequately pleaded the two remaining elements of control person liability, namely that PwCIL controlled PwC China or that PwCIL was a culpable participant in the alleged fraud. Because Lead Plaintiffs apparently concede that they cannot plead facts showing culpable participation under the governing legal standard, PwCIL addresses that element first.

## I.   PLAINTIFFS HAVE NOT ADEQUATELY PLEADED CULPABLE PARTICIPATION BY PWCIL.

The Complaint against PwCIL should be dismissed because it does not contain any well-pleaded facts supporting "culpable participation" by PwCIL in PwC China's audits of NQ Mobile's 2011 and 2012 financial statements. In their October 10, 2014 letter to the Court, Lead Plaintiffs appear to concede that they have failed to plead this element and, instead, argue that they do not need to allege culpable participation as a matter of law. (Letter of Oct. 10, 2014, ECF No. 115.) Lead Plaintiffs are wrong on the law. PwCIL sets out in detail the legal requirements for pleading culpable participation

(*see infra* Section I.A), before turning to the Consolidated Amended Class Action

Complaint in this case (*see infra* Section I.B).

> **A.      Plaintiffs Are Required To Plead Culpable Participation With Specificity.**

This Court on several occasions has confronted the question of what is

required to state a claim under Section 20(a).  This Court consistently has held that facts

establishing "culpable participation" are one of the necessary elements of such a claim.

This means that "the controlling person knew or should have known that the primary

violator, over whom that person had control, was engaged in fraudulent conduct".  *In re*

*SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 560 (S.D.N.Y. 2010) (Pauley, J.) (internal

quotation marks and citation omitted); *see also Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of*

*Am. Corp.*, 874 F. Supp. 2d 341, 368 (S.D.N.Y. 2012) (Pauley, J.); *In re Yukos Oil Co.*

*Sec. Litig.*, No. 04 Civ. 5243 (WHP), 2006 WL 3026024, at *23 (S.D.N.Y. Oct. 25, 2006)

(Pauley, J.); *In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2004 WL 2190357, at

*16 (S.D.N.Y. Sept. 30, 2004) (Pauley, J.).

The overwhelming majority view in this District—based on express

language from Second Circuit opinions—is that Section 20(a) requires a plaintiff to plead

affirmatively "that the controlling person was in some meaningful sense a culpable

participant in the fraud perpetrated by the controlled person".  *SEC v. First Jersey Sec.,*

*Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996).  In *First Jersey*, the Second Circuit established

a burden-shifting regime for Section 20(a).  "In order to establish a prima facie case of

controlling-person liability, a plaintiff must show a primary violation by the controlled

person and control of the primary violator by the targeted defendant, and show that the

controlling person was in some meaningful sense a culpable participant in the fraud

6

perpetrated by the controlled person." *Id.* (internal quotation marks, citations and alterations omitted); *see also Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973) (en banc) (explaining that the intent of Section 20(a) "was obviously to impose liability only on those directors who fall within its definition of control and who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons").[3] Once a plaintiff has established a *prima facie* case, including the element of culpable participation, "the burden shifts to the defendant to show that he acted in good faith, and that he 'did not directly or indirectly induce the act or acts constituting the violation'". *First Jersey*, 101 F.3d at 1473 (quoting 15 U.S.C. § 78t(a); internal case citations omitted).

Since *First Jersey* was decided in 1996, whenever the Second Circuit has addressed the elements of Section 20(a) liability, it has stated that "[i]n order to establish a prima facie case of liability under § 20(a), a plaintiff must show:  (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (quoting *First Jersey*, 101 F.3d at 1472).  The Second Circuit has reiterated this standard in numerous decisions.  *See Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014); *Ross v. Lloyds Banking Grp., PLC*, 546 F. App'x 5, 12 (2d Cir. 2013); *Solow v. Citigroup, Inc.*, 507 F. App'x 81, 83 (2d Cir. 2013); *ATSI*, 493 F.3d at 108; *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77-78 (2d Cir. 2001); *Suez*

---

[3] The legislative history of Section 20(a), which shows that Congress intended liability to require more than control, is set forth in *Lanza*, 479 F.2d at 1298-99, and *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 884-85, 889-90 (3d Cir. 1975).

*Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001);

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 170-71 (2d Cir. 2000); *see also In re Lehman*

*Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 186 (2d Cir. 2011) (assuming for

purposes of comparing Section 20(a) with Section 15 of the Securities Act that Section

20(a) liability requires pleading culpable participation); *New Orleans Employees Ret. Sys.*

*v. Celestica, Inc.*, No. 10-4702-cv, 2011 WL 6823204, at *1 n.2 (2d Cir. Dec. 29, 2011)

(noting that plaintiffs pleaded culpable participation with particularity as part of a Section

20(a) claim).

   The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires

that in any private action under the Securities Exchange Act of 1934 (the "Exchange

Act") "in which the plaintiff may recover money damages only on proof that the

defendant acted with a particular state of mind, the complaint shall, with respect to each

act or omission alleged to violate [the Exchange Act], state with particularity facts giving

rise to a strong inference that the defendant acted with the required state of mind".  15

U.S.C. § 78u-4(b)(2)(A).  The *First Jersey* standard requires alleging for a Section 20(a)

claim "some level of culpable participation at least approximating recklessness in the

section 10(b) context".  *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 248

(S.D.N.Y. 2006).

   This Court therefore has held that a plaintiff must plead "culpable

participation" with particularity under the PSLRA.  *See Pa. Pub. Sch. Emps.' Ret. Sys.*,

874 F. Supp. 2d at 368; *SLM Corp.*, 740 F. Supp. 2d at 560; *Yukos Oil Co.*, 2006 WL

3026024, at *23; *Bayer AG*, 2004 WL 2190357, at *16.  This is the better reading of the

law, and the overwhelming majority of judges in this District have taken the same

position.  *See, e.g.*, *In re ShengdaTech, Inc. Sec. Litig.*, No. 11 Civ. 1918 (LGS), 2014

WL 3928606, at *10 & n.1 (S.D.N.Y. Aug. 12, 2014) (collecting cases from more than a

dozen judges).  Nevertheless, Lead Plaintiffs appear to rely on the views of Judge Kaplan

and Judge Scheindlin, which are each inconsistent with the Second Circuit decisions and

this Court's prior rulings on the issues of "culpable participation".[4]  As Judge Marrero

wrote, "this Court cannot ignore the import of *First Jersey*, especially in light of the

Second Circuit's subsequent affirmations of the same standard.  Nothing precludes such a

burden-shifting scheme, and however unusual it may be to require the plaintiff to plead

an element that, at trial, the defendant bears the burden to disprove, reading *First Jersey*

this way reconciles the apparent inconsistency."  *In re Livent, Inc. Noteholders Sec.*

*Litig.*, 151 F. Supp. 2d 371, 416 (S.D.N.Y. 2001).  Similarly, Judge Griesa stated:

"Although the requirement has indeed only been articulated in dicta, it is clearly worded

and has been reiterated without reservation in at least five recent Second Circuit opinions.

Therefore, this court regards the need for a plaintiff to plead 'culpable participation' to be

the law of the Second Circuit."  *Meridian Horizon Fund, L.P. v. Tremont Grp. Holdings,*

*Inc.*, No. 09 Civ. 3708 (TPG), 2012 WL 6168151, at *2 (S.D.N.Y. Dec. 11, 2012)

(internal citations omitted).

        Because Section 20(a) liability requires that the defendant acted with a

particular state of mind, "culpable participation" must be pleaded with specificity.

---

[4] From Judge Kaplan, *see Dobina v. Weatherford Int'l Ltd.,* 909 F. Supp. 2d 228, 256 (S.D.N.Y. 2012), *and In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 307-310 (S.D.N.Y. 2005).  From Judge Scheindlin, *see In re Tronox, Inc. Sec. Litig.*, No. 09 Civ. 6220 (SAS), 2010 WL 2835545, at *15 (S.D.N.Y. June 28, 2010), *and In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 394-96 (S.D.N.Y. 2003).

**B.      Plaintiffs Make No Attempt To Plead Culpable Participation By PwCIL.**

The Complaint does not contain any facts to support a showing of culpable participation by PwCIL.  Lead Plaintiffs' only factual allegations with respect to PwCIL concern standards, guidelines and resources adopted by member firms throughout the PwC network.  (*See* Compl. ¶¶ 34-44.)  Lead Plaintiffs then allege conclusorily that "PwC-IL had direct oversight and involvement in its members [*sic*] firms' audits of NQ".  (Compl. ¶ 217.)  Yet Lead Plaintiffs do not plead any facts constituting direct involvement by PwCIL in PwC China's audits of NQ Mobile, let alone that PwCIL acted knowingly or recklessly.  (*See id.* ¶¶ 34-44, 214-217.)  "[T]o withstand a motion to dismiss, a § 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness."  *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 122-23 (S.D.N.Y. 2013).  There are simply no allegations in the Complaint concerning PwCIL's participation in PwC China's audits of NQ Mobile or concerning PwCIL's state of mind in connection with these audits.

Courts have previously dismissed complaints, like this one, with conclusory allegations of "culpable participation" in the context of international accounting firm networks.  In *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, No. 13 Civ. 1094 (ER), 2014 WL 3605540 (S.D.N.Y. July 21, 2014), the plaintiffs alleged that Deloitte China violated Section 10(b) through its audits of a Chinese company called ChinaCast, and also brought a claim under Section 20(a) against Deloitte U.S., alleging that Deloitte U.S. had "the final word on [Deloitte China's] audits and ChinaCast's SEC filings".  *Id.* at *26.  The allegations in *Special Situations Fund III* were, if anything, stronger than Lead Plaintiffs' allegations here, in

10

that the plaintiffs in *Special Situations Fund III* had a specific factual allegation of Deloitte U.S.'s involvement in the audit at issue.  The plaintiffs alleged "Deloitte U.S.'s involvement in preparation of the Company's 2010 Form 10-K", and specifically that "Deloitte U.S. directly communicated with the SEC regarding a particular write-off that it had directed ChinaCast to make".  *Id.*  Yet the claim against Deloitte U.S. was properly dismissed for failure to allege that the participation was in any way culpable.  *Id.*  The court noted that "Plaintiffs do not suggest that the write-off at issue was improper or suspicious, nor does this example amount to an allegation of conscious misbehavior; at most, it is a more detailed allegation of involvement".  *Id.*  The court held that the plaintiffs had "to provide specific facts from which the Court might conclude that Deloitte U.S. culpably participated in fraud", *id.*, and dismissed the claim against Deloitte U.S.

The allegations in *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105 (S.D.N.Y. 2013), were even more similar to those here.  In *McIntire*, the plaintiffs brought a Section 10(b) claim against Deloitte Hong Kong, the firm that conducted the specific audit at issue, as well as Section 20(a) claims against Deloitte Touche Tohmatsu Limited ("DTTL"), the international network coordinating entity, and Deloitte U.S., which the plaintiffs alleged in turn controlled DTTL.[5]  *Id.* at 136-37.  The plaintiffs alleged, among other things, that "DTTL promulgates general professional and ethical standards, auditing procedures, and even the software on which professionals

---

[5] The *McIntire* plaintiffs also brought Section 10(b) claims directly against DTTL and Deloitte U.S.  The court dismissed those claims under *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011), as those defendants did not make or have ultimate authority over the statements by Deloitte Hong Kong in its audit reports.  *McIntire*, 927 F. Supp. 2d at 136-38.

11

perform audits to its member firms" and that "DTTL dictates the specific methodologies to be applied in conducting audits and the particular software and documentation procedures to be used". *Id.* at 137. These allegations of common professional standards were insufficient. The court dismissed the Section 20(a) claims against DTTL and Deloitte U.S., finding that the plaintiffs' allegations failed to set forth particularized facts establishing culpable participation in the alleged fraud and therefore failed under the PSLRA. *Id.* at 138.

For the same reasons as the Section 20(a) claims against affiliates of the audit firm that conducted the audit at issue were dismissed in *Special Situations Fund III* and *McIntire*, the Section 20(a) claim against PwCIL should be dismissed here. Lead Plaintiffs plead no facts whatsoever about PwCIL's participation in PwC China's audits of NQ Mobile, let alone facts showing that PwCIL acted with conscious misbehavior or recklessness. Because Lead Plaintiffs fail adequately to plead "culpable participation" by PwCIL in PwC China's audits of NQ Mobile, the Complaint fails to state a Section 20(a) claim against PwCIL.

## II.  PLAINTIFFS HAVE NOT ADEQUATELY PLEADED THAT PWCIL CONTROLLED PWC CHINA.

The claim against PwCIL also fails because Lead Plaintiffs do not plead the "control" element of Section 20(a). In addition to failing to plead culpable participation, Lead Plaintiffs do not adequately allege that PwCIL controlled PwC China, a separate element of a Section 20(a) claim. In order to establish control, the complaint must allege that the defendant possessed "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise". *First Jersey*, 101 F.3d at 1473 (quoting 17 C.F.R.

12

§ 240.12b-2) (internal quotation marks omitted).  The necessary control is not just the right generally to direct the alleged primary violator's activities, but "actual control over the *transaction* in question".  *Floyd v. Liechtung*, No. 10 Civ. 4254 (PAC), 2013 WL 1195114, at *6 (S.D.N.Y. Mar. 25, 2013) (quoting *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010) (internal quotation marks omitted) (emphasis in original).

Lead Plaintiffs' claims here concern the coordinating entity of an international accounting firm network with "member firms located around the world". (Compl. ¶ 34.)  The Complaint does nothing more than describe a general relationship between PwC China and PwCIL that includes consistent policies and standards for the network.  (*See id.* ¶¶ 37-43.)  Where, as here, the only allegations of control are conclusory allegations based primarily on the setting of professional standards and guidelines for a network of firms, there can be no control.  *See In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 395-96 (S.D.N.Y. 2003).  This case is therefore fundamentally different from ones in which Section 20(a) claims are brought against officers and directors of a corporation who oversee day-to-day activities of the company, including the transactions at issue.  *See, e.g.*, *SLM Corp.*, 740 F. Supp. 2d at 560 (Section 20(a) defendant was Chief Executive Officer during the class period and was "responsible for many of the allegedly fraudulent statements").  The allegations here do not begin to approach those that the Second Circuit noted were sufficient in *Celestica*, where the plaintiffs "pleaded with particularity that [two executives] were culpable participants in the alleged fraud because they personally executed and oversaw Celestica's restructuring, were informed of the resulting inventory buildup, and made

13

misstatements to the public regarding the company's inventory management". *Celestica*, 2011 WL 6823204, at *1 n.2.

In *Asia Pulp*, the court dismissed control claims against an international network coordinating entity where "the Amended Complaint [was] bereft of any allegations that AWSC [the coordinating entity], pursuant to an agreement or otherwise, was able to control or in any way influence the particular audits conducted or opinions offered by its individual member firms". 293 F. Supp. 2d at 396. Indeed, the Court found that, "[a]t most, the Amended Complaint alleges generally that AWSC set 'professional standards and principles' under which the individual offices operated". *Id.*; *see also In re Lernout & Haspie Sec. Litig.*, 230 F. Supp. 2d 152, 175-76 (D. Mass. 2002) (dismissing Section 20(a) claims against KPMG International and KPMG U.K. for an audit performed by KPMG Belgium).[6] Plaintiffs' allegations here suffer from the same failing. (*See* Compl. ¶¶ 37-43.)

Lead Plaintiffs make the generalized allegation that the "audit services" provided by PwC China "are dictated directly by PwC-IL" (*id.* ¶ 39), but they derive this conclusion from the Transparency Report, which states that "the PwC global network of firms . . . agree to follow a baseline audit methodology" (Ryan Decl. Ex. B at 6). The Transparency Report goes on to state that the methodology, which is "deployed through the use of audit software, tools and related guidance", "must not be a substitute for

---

[6] As in the Section 20(a) context, courts have repeatedly dismissed claims against international network coordinating entities, such as PwCIL, or other affiliated accounting firms brought under common-law theories of agency or vicarious liability. *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 458-61 (S.D.N.Y. 2010); *Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329 (DC), 2008 WL 5110919, at *3-4 (S.D.N.Y. Nov. 26, 2008); *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03 Civ. 0613 (GBD), 2004 WL 112948, at *4-8 (S.D.N.Y. Jan. 22, 2004).

14

auditor judgment". (*Id.*)  The methodology provides a baseline process or set of procedures but it does not dictate the conduct of audit, or more importantly, its results. Lead Plaintiffs also allege that "PwC-IL had direct oversight and involvement in its member firms' audits of NQ" (Compl. ¶ 217), but they provide no facts to support that general assertion beyond allegations that PwCIL has an Audit Practice Committee that is charged with enforcing guidelines on professional standards throughout the global network and approving audit engagements and fees (*id.* ¶¶ 40-41).  Such allegations have been found "inadequate" to demonstrate control by an international accounting network over a member firm. *Asia Pulp*, 293 F. Supp. 2d at 396.

Lead Plaintiffs' allegations do not support even a general ability by PwCIL to control the activities of PwC member firms.  In paragraph 38, Lead Plaintiffs quote from the PwC U.S. Transparency Report, which states, "Member firms have agreed to abide by certain common policies and maintain the standards of the PwC network". (Compl. ¶ 38. (quoting Ryan Decl. Ex. B at 3).)  On that same page, however, the Transparency Report states that "PwCIL does not practice accounting, provide auditing or other professional services, or conduct business with third parties", and that "[a] member Firm cannot act as agent of PwCIL or any other member Firm".  (Ryan Decl. Ex. B at 3.)  The Transparency Report makes clear that PwCIL does not control its member firms or the services they provide.

Lead Plaintiffs do not allege actual, direct control by PwCIL over PwC China's audits of NQ Mobile.  Even so, in several places, Lead Plaintiffs stretch what they can plead beyond the breaking point.  For example, Lead Plaintiffs discuss what they allege is a "PwC-IL Accounting & Audit Practice Committee", which Lead Plaintiffs

allege is "charged with implementing and enforcing guidelines on professional standards throughout the global network". (Compl. ¶ 40 (citing Ryan Decl. Ex. B at 4).)  In the following paragraph of the Complaint, Lead Plaintiffs allege that "[t]his same Audit Committee" also "approves [its member firms'] audit engagement and related audit fee and, when applicable, non-audit engagements and related fees" and then quotes from a statement in the Transparency Report that "effective oversight of auditors by audit committees is one of the keys to promoting greater audit quality". (Compl. ¶ 41 (citing Transparency Report without page number) (emphasis added; bracketed material in Complaint).)

This paragraph of the Complaint misreads the Transparency Report.  Lead Plaintiffs confuse a committee of the Board of Partners and Principals of PwC U.S. with the audit committees of the boards of directors of PwC U.S.'s clients.  None of these "committees" is a PwCIL body.  The Transparency Report on page 4 is discussing the Board of Partners and Principals, a body that oversees the management of PwC U.S. (Ryan Decl. Ex. B at 4.)  The Transparency Report then discusses "[t]wo committees that assist the Board with its responsibility relating to audit quality", one of which is the "Accounting & Auditing Practice (A&AP) Committee". (*Id.*)  The A&AP committee is part of the governance structure of PwC U.S., not a PwCIL body.  Then, in a later section of the document, the Transparency Report discusses audit committees, and states that "[o]ne of the keys to promoting greater audit quality is audit committee oversight of auditors". (*Id.* at 8.)  The "audit committees" discussed here are committees of the boards of directors of PwC U.S.'s clients.  When the Transparency Report states, "the audit committee approves our audit engagement and related fee and, when applicable,

non-audit engagements and related fees" (*id.*), it is stating that the audit committees of PwC U.S.'s clients approve PwC U.S.'s audit fees, not that a PwCIL body approves its member firms' audit fees.

Next, Lead Plaintiffs quote from the statement in the Transparency Report that "certain audit activities are performed by audit team members who are located in one of three centralized service centers, two of which are outside of the United States" (*see* Compl. ¶ 42 (quoting Ryan Decl. Ex. B at 7)), as if that fact were related to the conclusory allegation that "PwC-IL has essentially plenary authority over the audits performed by members of the global PwC network" (Compl. ¶ 41).  The Transparency Report does not state, however, and Lead Plaintiffs do not allege, that the "centralized service centers" are owned or controlled by PwCIL.  They are not.  Nor do Lead Plaintiffs allege that the "centralized service centers" played any role in PwC China's audits of NQ Mobile.

Because Lead Plaintiffs have failed to allege that PwCIL had actual, direct control of PwC China's audits of NQ Mobile, Lead Plaintiffs have failed to state a claim against PwCIL under Section 20(a).

## III.      THERE CAN BE NO SECTION 20(A) VIOLATION BY PWCIL WITHOUT A PRIMARY 10(B) VIOLATION BY PWC CHINA.

A claim of control-person liability can stand only if there is a primary violation.  Where a Section 10(b) claim is dismissed, any associated Section 20(a) claim must also be dismissed.  *See, e.g.*, *Carpenters Pension Trust Fund*, 750 F.3d at 236.  As discussed in PwCIL's pre-motion letter (Letter of Oct. 3, 2014 at 3, ECF No. 112) and at the October 30, 2014 pre-motion conference (Tr. 11-13, Oct. 30, 2014, ECF No. 126), briefing on the question of whether Lead Plaintiffs have stated a Section 10(b) claim

17

against PwC China should be deferred until PwC China is served and appears through counsel.  If the Court then determines that the Complaint fails to state a claim against PwC China as the primary violator, then the Section 20(a) claims against PwCIL necessarily also fail.  *See Frederick v. Mechel OAO*, 475 F. App'x 353, 357 (2d Cir. 2012) ("[B]ecause a violation of Exchange Act Section 20(a) must be predicated on an underlying primary violation, the inadequacy of the [Complaint]'s allegations of scienter requires the conclusion that its allegations of control-person liability also fail.").

## IV.      THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

At the pre-motion conference, the Court gave Lead Plaintiffs' counsel an opportunity to amend if he wished to do so.  (Tr. 7-9, Oct. 30, 2014, ECF No. 126.)  The Court then stated that it did not intend to grant leave to replead if it granted the defendants' motion.  (*Id.* at 9.)  Counsel for PwCIL stated that he understood from the pre-motion letters that Lead Plaintiffs' opposition to PwCIL's motion to dismiss "makes a purely legal argument, arguing for a different legal standard", and that Lead Plaintiffs "don't intend to attempt to plead any facts that would constitute culpable participation".  (*Id.* at 10.)  Lead Plaintiffs did not seek to amend the Complaint to add any facts concerning "culpable participation" by PwCIL and, consequently, the Complaint should be dismissed with prejudice.

**Conclusion**

For the foregoing reasons, PwCIL respectfully requests that the claim against PwCIL be dismissed with prejudice.

December 16, 2014

CRAVATH, SWAINE & MOORE LLP
by /s/ Antony L. Ryan
Thomas G. Rafferty
Antony L. Ryan
Samira Shah
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
(212) 474-1000
trafferty@cravath.com
aryan@cravath.com
sshah@cravath.com

*Attorneys for Defendant*
*PricewaterhouseCoopers International*
*Limited*

19