UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                              :

In re NQ Mobile, Inc. Securities Litigation

                                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                              :

This Document Relates To:

                                              :

All Actions

                                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

13cv7608

<u>MEMORANDUM & ORDER</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/15

WILLIAM H. PAULEY III, District Judge:

        Defendant PricewaterhouseCoopers International Limited ("PwC International")

moves to dismiss the Securities Exchange Act of 1934 (the "1934 Act") Section 20(a) claim in

Lead Plaintiffs' Consolidated Amended Class Action Complaint (the "Complaint"). For the

following reasons, PwC International's Fed. R. Civ. P. 12(b)(6) motion to dismiss is granted.

BACKGROUND

        Lead Plaintiffs bring this federal securities class action against Defendants NQ

Mobile ("NQ"), various present and former executives of NQ, as well as NQ's auditors

PricewaterhouseCoopers Zhong Tiang ("PwC China"), and PwC International, the coordinating

entity of PwC member firms. For purposes of this motion, the allegations in the Complaint are

accepted as true.

        The Complaint tracks revelations in a Muddy Waters equity research report, titled

"NQ Mobile: China Fraud 2.0" (the "Muddy Waters Report"). (Compl. ¶ 4.) The Complaint

describes how NQ, a Chinese company specializing in security and privacy-related mobile

internet services, overstated its performance and concealed adverse facts concerning its business

in its public filings.  (Compl. ¶¶ 45-90.)  As a result of publication of the Muddy Waters Report,

NQ shares declined roughly 56% in two trading days.  (Compl. ¶¶ 93, 131-33.)

PwC China issued "unqualified audit opinions on NQ's year-end financial

statements for FY 2011 and 2012."  (Compl. ¶ 35.)  According to the Complaint, those audit

opinions were misleading because, inter alia, PwC China knew or should have known that NQ

"fundamentally misrepresented the nature of its business, including its revenues" and that "NQ's

financial statements for 2011 and 2012 . . . were not presented in conformity with GAAP."

(Compl. ¶ 209.)  The Complaint alleges that PwC International acted as a "controlling person"

within the meaning of Section 20(a), based on an underlying violation by PwC China of Section

10(b) and Rule 10b-5. [1]  (Compl. ¶¶ 213-17.)

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the

complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken."  Allen v. WestPoint-Pepperell,

Inc., 945 F.2d 40, 44 (2d Cir. 1991).

## DISCUSSION

Section 20(a) of the 1934 Act provides:

Every person who, directly or indirectly, controls any person liable
under any provision of [the 1934 Act] or of any rule or regulation

---

[1]        The Complaint has not yet been served on PwC China.  Therefore, this Court does not address the
sufficiency of Lead Plaintiffs' underlying Section 10(b) claim against PwC China.

> thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

To establish a prima facie case of control person liability, a "plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007) (internal quotation marks and citation omitted); SEC v. First Jersey Sec. Inc., 101 F.3d 1450, 1473 (2d Cir. 1996) (same). As detailed below, Lead Plaintiffs fail to plead facts necessary to sustain the "control" and "culpable participation" elements of a Section 20(a) violation.

### A. Control Person

To establish "control" under Section 20(a), a Complaint must allege that the defendant possessed "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." First Jersey Sec. Inc., 101 F.3d at 1473 (2d Cir. 1996). Citing the PwC website and a "Transparency Report" available through that website,[2] the Complaint alleges that all of the member firms in the PwC network (including PwC International and NQ's auditor, PwC China) operate with a "common purpose" and under a "single umbrella" (Compl. ¶ 37), and that PwC International "exerts direct control over the firms in its network, including PwC [China], by enforcing policies

---

[2]     For purposes of Rule 12(b)(6), the complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (internal quotations omitted).

to which each member must conform." (Compl. ¶ 38.) Lead Plaintiffs allegations that PwC International is responsible for enforcing policies across the network of PwC firms are conclusory. Further, control under Section 20(a) is not satisfied where a coordinating entity like PwC International merely sets "professional standards and principles" under which individual offices operate. In re Asia Pulp & Paper Sec. Litig., 293 F. Supp. 2d 391, 395-96 (S.D.N.Y. 2003).

Lead Plaintiffs fail to plead that PwC International exerted actual control over the 2011 and 2012 audits of NQ. Nor could they. The control person must "not only have actual control over the primary violator, but have actual control over the transaction in question." Floyd v. Liechtung, 10 Civ. 4254 (PAC), 2013 WL 1195114, at *6 (S.D.N.Y. March 25, 2013) (emphasis added). The Complaint alleges conclusory allegations that the audit services provided by PwC China "are dictated by PwC [International]" and that PwC China "performed the audit services for NQ as a de facto agent of PwC [International] and provided those services on the authority of, at the direction of, under the control of, and for the sole benefit of PwC [International]." (Compl. ¶¶ 36, 39) (emphasis in original.)

Lead Plaintiffs offer no facts to substantiate their conclusory allegations. They cite the Transparency Report noting that "the PwC global network of firms . . . agree to follow a baseline audit methodology," (Compl. ¶ 39). But elsewhere, the Transparency Report specifically provides that "PwC [International] does not practice accounting, provide auditing or other professional services, or conduct business with third parties" and a "member firm cannot act as agent of PwC [International] or any other member Firm." (Ryan Decl. Ex. B at 6.) Lead Plaintiffs also mistakenly cite the Transparency Report for the proposition that a PwC International "Audit Committee" approves its member firms' "audit engagement and related

audit fee" (Compl. ¶ 41).  However, the reference to the "Audit Committee" in the Transparency Report is to the audit committees of the boards of directors of PwC International's <u>clients</u>.

Lead Plaintiffs also note that PwC China's chair sits on PwC International's "Network Leadership Team," and cite <u>In re Parmalat Sec. Litig.</u>, as support for the proposition that a court can sustain control person allegations where plaintiffs allege overlap in audit partners between the controlling and controlled entity.  594 F. Supp. 2d 444, 458-59 (S.D.N.Y. 2009).  This argument is unpersuasive.  In that case, Judge Kaplan found that Deloitte U.S. controlled the Deloitte network coordinating entity, because the CEO, CFO, and other officers of Deloitte U.S. held key positions at the coordinating entity.  <u>In re Parmalat Sec. Litig.</u>, 594 F. Supp. 2d at 458-59.  By contrast, Lead Plaintiffs allege that the senior partner of PwC China is <u>one</u> of five people on the PwC International "Network Leadership Team."  (Compl. ¶ 37.)  Thus, Lead Plaintiffs fail to allege "control" by PwC International over PwC China, sufficient to sustain its Section 20(a) claim against PwC International.

B.  <u>Culpable Participation</u>

The law within this Circuit regarding "culpable participation" is unsettled.  District judges disagree on—at least—two issues.  First, some judges have found that Section 20(a) plaintiffs must allege "culpable participation" as a third element of their claim.  Others have held that Section 20(a) creates a burden-shifting framework where plaintiffs need only plead a primary Section 10(b) violation and control.  Under that construction, defendants may raise a good faith defense in their answer that can later be rebutted by plaintiffs.  <u>See</u> <u>Special Situations Fund III QP, L.P., v. Deloitte Touche Tohmatsu CPA, Ltd.</u>, 33 F. Supp. 3d 401, 437 (S.D.N.Y. 2014).

While the Second Circuit has not adopted a rule requiring parties to plead the element of "culpable participation," the majority of judges in this District, including this one, require Section 20(a) plaintiffs to allege "that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." First Jersey Sec. Inc., 101 F.3d 1450, 1472 (2d Cir. 1996); ATSI Commc'ns, Inc., 493 F.3d at 108; Special Situations Fund III QP, L.P., 33 F. Supp. 3d at 437-38, n.19 (collecting cases). But see Dobina v. Weatherford Int'l Ltd., 909 F. Supp. 2d 228, 257 (S.D.N.Y. 2012) (noting that a plaintiff need not plead culpable participation by the control person in order to state a legally sufficient claim); In re WorldCom, Inc. Sec. Litig., 294 F. Supp. 2d 392, 415 (S.D.N.Y. 2003) (same).

Second, there is wider disagreement over whether the "[t]he culpable participation element is subject to the heightened pleading requirements of the PLSRA." Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp., 874 F. Supp. 2d 341, 368-69 (S.D.N.Y. 2012) (In assessing Section 20(a) liability, courts "have required a showing of both fraudulent conduct and a culpable state of mind"); In re Bayer AG Sec. Litig., 03 Civ. 1546 (WHP), 2004 WL 2190357, at *16 (S.D.N.Y. Sept. 30, 2004) (noting that the PSLRA requires that "plaintiffs must demonstrate a defendant's culpable state of mind to establish a claim for control person liability"); see also McIntire v. China MediaExpress Holdings, Inc., 927 F. Supp. 2d 105, 122-23 (S.D.N.Y. 2013) ("[T]o withstand a motion to dismiss, a § 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness."); but see In re Initial Pub. Offering Sec. Litig, 241 F. Supp. 2d 281, 395-96 (S.D.N.Y. 2003) (holding claims under Section 20(a) are subject only to the pleading standards of Rule 8(a)).

For the reasons set forth in this Court's previous decisions, a plaintiff must allege "culpable participation" and plead that element with particularity. See, e.g., Pa. Pub. Sch.

6

Emps.' Ret. Sys., 874 F. Supp. 2d at 368-69; In re Bayer AG Sec. Litig., 2004 WL 2190357, at *16. Lead Plaintiffs do neither. The Complaint is bereft of allegations of culpable participation or PwC International's culpable state of mind. While Lead Plaintiffs allege that "PwC [International] had direct oversight and involvement in its members firms' audits of NQ[,]" (Compl. ¶ 217) they plead no facts showing that PwC International participated directly in PwC China's audits of NQ, or that PwC International acted with a culpable state of mind. Thus, Lead Plaintiffs fail to plead "culpable participation" by PwC International under Section 20(a).

CONCLUSION

For the foregoing reasons, PricewaterhouseCoopers International Limited's motion to dismiss the Section 20(a) claim in Lead Plaintiffs' Complaint is granted without leave to replead.[3] The Clerk of Court is directed to terminate PricewaterhouseCoopers International Limited as a party, and terminate the motion pending at ECF No. 132.

Dated: March 27, 2015
       New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record.*

---

[3]      At a pre-motion conference, Lead Plaintiffs were afforded an opportunity to amend, and declined. (See Oct. 30, 2014 Tr., ECF No. 126.)